UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-20190-BLOOM/Otazo-Reyes

JOEY D. GONZALEZ RAMOS,

    Plaintiff,

v.

U.S. DEPARTMENT OF AGRICULTURE,

    Defendant.
_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant the United States Department of Agriculture's ("Defendant" or "USDA") Motion to Dismiss First Amended Complaint, ECF No. [37]. Plaintiff Joey D. Gonzalez Ramos ("Plaintiff" or "Gonzalez") filed a Response, ECF No. [40], to which USDA filed a Reply, ECF No. [41]. The Court has carefully considered the Motion, the Response, Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

    **I.**    **BACKGROUND**

This case arises from the USDA's alleged failure to pay Gonzalez his full salary while on administrative leave after USDA determined that Gonzalez was absent without leave ("AWOL"). *See* ECF No. [36] ("First Amended Complaint" or "FAC"). In the FAC, Gonzalez alleges that he was an Information Technology Specialist employed at the Agricultural Research Service, an agency of USDA. *Id*. ¶ 6. After fourteen (14) years, Gonzalez was removed from employment by USDA on August 10, 2018. *Id*. ¶ 7. Gonzalez appealed his removal to the Merit Systems Protection Board ("MSPB"). *Id*. at ¶ 8. On September 23, 2019, the MSPB issued an initial decision canceling

Gonzalez's removal, and "ordering reinstatement to his previous position with pay and benefits" ("Initial Decision"). *Id*. ¶ 9.[1] The Initial Decision stated in pertinent part:

> If a petition for review is filed by either party, I ORDER the agency to provide interim relief to the appellant in accordance with 5 U.S.C. § 7701(b)(2)(A). The relief shall be effective as of the date of this decision and will remain in effect until the decision of the Board becomes final.

*Id*. ¶ 10. On October 28, 2019, USDA filed a petition for review challenging the Initial Decision. *Id*. ¶ 11. USDA thereafter filed a certification of interim relief with the MSPB, certifying that Gonzalez would not return to the workplace, but would receive pay, compensation, and all other benefits pending the outcome of the petition for review. *Id*. ¶ 12. On November 20, 2019, Lisa Baldus ("Baldus"), Gonzalez's supervisor, notified Gonzalez by letter ("Baldus Letter") that USDA had placed him on indefinite paid administrative leave, but did not specify the authority under which USDA did so. *Id*. ¶¶ 14-15. The Baldus Letter stated that

> [i]t has been determined that it is in the Agency's best interest to continue you in a non-duty status during the pendency of your Appeal because your presence would be unduly disruptive to the work environment. While you are on administrative leave, you remain an employee of the Agricultural Research Service and you will continue to receive pay and benefits.

ECF No. [37-1] at 1.

Gonzalez thereafter received an email from USDA on December 6, 2021, informing him that his position had been realigned, his residence was designated as his duty station, and his work schedule was to be determined. *Id*. ¶ 19. Gonzalez never requested a position transfer or consented to the USDA designating his residence as a duty station. *Id*. ¶¶ 20, 21. On December 8, 2021, Gonzalez received another email from USDA directing him to complete a background investigation for the position to which he was transferred. *Id*. ¶ 22. Gonzalez requested

---

[1] Specifically, the Initial Decision states that the Administrative Judge orders "the agency to cancel the removal and to retroactively restore appellant effective August 10, 2018." *See* ECF No. [40-1].

confirmation that he was still on administrative leave and Baldus confirmed that he was. *Id*. ¶¶ 23, 24. On December 20, 2021, Lisa Keeter ("Keeter"), USDA's Director of the Business Services Division, informed Gonzalez that he had five (5) calendar days to complete the background investigation process and threatened him that the failure to do so might result in charges of AWOL. *Id*. ¶ 25. AWOL status means "a non-pay status that covers an absence from duty which has not been approved." *Id*. ¶ 27. On January 11, 2022, Keeter informed Gonzalez via letter that he was charged as of December 28, 2021, as AWOL and would continue to be charged as AWOL until he: (a) completed the questionnaire and (b) submitted all required documents for his background investigation. *Id*. ¶ 28. On January 12, 2022, Keeter sent Gonzalez a description of the job to which he had been transferred. *Id*. ¶ 29. On March 18, 2022, Gonzalez received another letter from Keeter proposing to remove him from his employment. *Id*. ¶ 30. On May 4, 2022, USDA removed Gonzalez from employment. *Id*. ¶ 31. Gonzalez was never notified by USDA that he was not on paid administrative leave between December 28, 2021 and March 18, 2022. *Id*. ¶ 32.

As a result, Gonzalez asserts one claim against USDA for violation of the Back Pay Act, 5 U.S.C. § 5596, alleging that USDA knew or should have known that Plaintiff cannot be AWOL while on administrative leave and, while on administrative leave, Plaintiff was entitled to his full salary. Gonzalez alleges that the Court has jurisdiction over his claim pursuant to the Little Tucker Act, 28 U.S.C. § 1346, the Back Pay Act, and USDA's decision to place him on administrative leave. ECF No. [36] ¶ 2. In the Motion, USDA requests that the Court dismiss this case pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

## II. LEGAL STANDARD

### A. Dismissal for lack of subject matter jurisdiction

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes

one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.").

"In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). As such, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), the district court is free to independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

However, a court may independently weigh facts and find that it lacks subject matter jurisdiction only "if the facts necessary to sustain jurisdiction *do not implicate the merits of plaintiff's cause of action.*" *Morrison*, 323 F.3d at 925 (citation omitted) (emphasis in original). When a jurisdictional challenge implicates the merits of plaintiff's claim, the court must "find that

jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.* (citations omitted). According to the Eleventh Circuit, this ensures "a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion." *Id.* (citations omitted) (alterations in original); *see also SEC v. LeCroy*, No. 2:09-CV-2238-AKK, 2010 WL 11565305, at *2 (N.D. Ala. Aug. 4, 2010).

### B. The Little Tucker Act (28 U.S.C. § 1346(a)(2))

Under the "Little Tucker Act," district courts possess concurrent jurisdiction with the Court of Federal Claims to entertain any monetary claim against the United States for an amount not exceeding $10,000 "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages not sounding in tort." 28 U.S.C. § 1346(a)(2).[2] "The Little Tucker Act . . . doesn't create a cause of action against the federal government—but only waives sovereign immunity for certain 'claim[s] against the United States, not exceeding $10,000." *Savage Servs. Corp. v. United States*, 25 F.4th 925, 939 (11th Cir. 2022) (citing 28 U.S.C. § 1346(a)(2)). However, the waiver of sovereign immunity is only for money-mandating Constitutional provisions, statutes, regulations, and executive orders. *See Crowley v. United States*, 398 F.3d 1329, 1334 (Fed. Cir. 2005); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.

---

[2] Under the Tucker Act, 28 U.S.C. § 1491, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Thus, non-tort claims against the United States exceeding $10,000 must be brought in the Court of Federal Claims. *Friedman v. United States*, 391 F.3d 1313, 1315 (11th Cir. 2004).

Cir. 2005) ("[I]n order to come within the jurisdictional reach and waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.") (citing *U.S. v. Mitchell*, 463 U.S. 206, 216 (1983)).

"When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation . . . the trial court at the outset shall determine . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating." *Fisher*, 402 F.3d at 1173.

### C. Back Pay Act (5 U.S.C. § 5596)

The Back Pay Act states that

(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—

(i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period[.]

5 U.S.C. § 5596(b).

"The Back Pay Act alone is not a money-mandating source, but is only money-mandating where the plaintiff's Back Pay Act claim is based on violations of another money-mandating source." *McAllister*, 105 Fed. Cl. at 183 (citing *Mendoza v. United States*, 87 Fed. Cl. 331, 335 (Fed. Cl. 2009)). "By the Back Pay Act's own terms, a tribunal must also look for an 'applicable law, rule, regulation, or collective bargaining agreement' as the source of an employee entitlement which an 'unjustified or unwarranted personnel action' has denied or impaired." *Hambsch v. United States*, 848 F.2d 1228, 1231 (Fed. Cir. 1988).

In this case, Gonzalez relies upon USDA Departmental Regulation No. 4060-630-002 (the "Regulation"), which sets forth USDA's policy on excused absence and administrative leave. *See* ECF No. [40-3].

### III. DISCUSSION

USDA argues that the Court lacks subject matter jurisdiction because Gonzalez's claim in effect seeks to challenge compliance with the Initial Decision and constitutes an improper attempt to circumvent MSPB proceedings already in progress. USDA argues further that Gonzalez fails to identify a source of law that would give rise to jurisdiction over his claim under the Little Tucker Act. Specifically, USDA argues that neither of the sources Gonzalez identifies in the Amended Complaint and relies upon for his claim—the Back Pay Act and USDA Regulation—are money-mandating. In response, Gonzalez disputes USDA's characterization of his claim. He argues that the definition of the term "administrative leave" (according to 5 U.S.C. § 6329a) and the Regulation both expressly state that an employee will not lose pay while on administrative leave, and therefore the Regulation and 5 U.S.C. § 7701(b)(2)(B) allow the Court to exercise jurisdiction over his claim.

Because the determination of the nature of Gonzalez's claim is dispositive, the Court considers that issue first.

#### A. Gonzalez's Claim Involves USDA's Compliance with the Initial Decision

The parties disagree with respect to the nature of Gonzalez's claim. USDA asserts that Gonzalez's claim is premised upon USDA's alleged failure to comply with the interim relief provided in the Initial Decision. Gonzalez asserts his claim is that he could not be AWOL, a non-pay status, while he was on administrative leave. As such, USDA violated its own decision to maintain him on paid administrative leave pending a final decision by the MSPB. Gonzalez asserts

7

that his claim arises from USDA's decision to place him in AWOL status, not USDA's failure to comply with the Initial Decision. Therefore, according to Gonzalez, this Court may properly exercise jurisdiction under the Little Tucker Act, the Back Pay Act, and USDA's decision to place him on administrative leave. *See* ECF No. [36] ¶ 2. However, upon review, the Court concludes that Gonzalez's claim seeks to challenge USDA's compliance with the Initial Decision, and thus the exercise of jurisdiction is improper.

As alleged in the FAC, and as set forth in the Initial Decision,[3] the Administrative Judge ("AJ") awarded interim relief pursuant to 5 U.S.C. § 7701(b)(2)(A) in the event a petition for review was filed, and the interim relief was ordered to be effective as of the date of the Initial Decision until the decision of the MSPB became final. *See* ECF No. [40-1] at 9. 5 U.S.C. § 7701 provides that

> [i]f an employee or applicant for employment is the prevailing party in an appeal under this subsection, the employee or applicant shall be granted the relief provided in the decision effective upon the making of the decision, and remaining in effect pending the outcome of any petition for review under subsection (e), unless—
> [. . .]
> (ii)
>    (I) the relief granted in the decision provides that such employee or applicant shall return or be present at the place of employment during the period pending the outcome of any petition for review under subsection (e); and
>
>    (II) the employing agency, subject to the provisions of subparagraph (B), determines that the return or presence of such employee or applicant is unduly disruptive to the work environment.

5 U.S.C. § 7701(b)(2)(A). Subparagraph (B) of the statute provides that

> [i]f an agency makes a determination under subparagraph (A)(ii)(II) that prevents the return or presence of an employee at the place of employment, such employee shall receive pay, compensation, and all other benefits as terms and conditions of employment during the period pending the outcome of any petition for review under subsection (e).

---

[3] Gonzalez attached the Initial Decision to the Response, *see* ECF No. [40-1].

5 U.S.C. § 7701(b)(2)(B).

Following the Initial Decision, Baldus informed Gonzalez that he was being placed on administrative leave and would continue to receive pay and benefits. *See* ECF No. [37-1] at 1. Although Gonzalez asserts in his Response that it is not clear under what authority USDA placed him on administrative leave because the Baldus Letter did not explicitly identify any such authority, the assertion is not well-taken. Notably, Gonzalez alleges that USDA certified to the MSPB on November 7, 2019, in accordance with § 7701(b)(2)(B), that Gonzalez would not be returning to the workplace, and would receive pay, compensation, and all other benefits during the period pending the outcome of the petition for review. *See* ECF No. [36] ¶ 13. Thereafter, USDA sent Gonzalez the Baldus Letter, dated November 22, 2019. Gonzalez has not disputed the authenticity of the Baldus Letter or that it is central to his claim. As such, the Court is permitted to consider it. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (*citing Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002) ("[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. 'Undisputed' in this context means that the authenticity of the document is not challenged.") (internal citation omitted)).

The Baldus Letter sets forth that USDA determined that Gonzalez's presence would be "unduly disruptive to the work environment," in accordance with 5 U.S.C. § 7701(b)(2)(A)(ii)(II). Therefore, the Baldus Letter demonstrates that USDA placed Gonzalez on administrative leave, a

9

status that entitles him to pay and benefits in accordance with § 7701(b)(2)(B), and in compliance with the Initial Decision.[4]

As such, taking the FAC's allegations as true, together with the Baldus Letter and the Initial Decision, Gonzalez's claim for which he seeks this Court's review—that he could not properly be considered AWOL while on administrative leave—necessarily implicates USDA's compliance with the Initial Decision. As alleged, it was a result of the Initial Decision that Gonzalez was placed on administrative leave. Thus, to the extent that Gonzalez seeks this Court's review of the Initial Decision, the Court lacks jurisdiction. *See Manning v. United States*, No. 2022-1025, 2022 WL 621048, at *2 (Fed. Cir. Mar. 3, 2022) ("exclusive authority to review determinations of MSPB AJs resides in the full Board" and the Federal Circuit).[5]

This Court may not otherwise exercise jurisdiction over a challenge to compliance with the Initial Decision of the MSPB. In cases that do not assert claims for discrimination, judicial review is only available after the MSPB issues a *final* decision. *See* 5 U.S.C. § 7703(a)(1) ("Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision."). In this case, no final decision has been issued by the MSPB, as the petition for review remains pending. As such, Gonzalez fails to demonstrate that the Court may properly exercise jurisdiction over a

---

[4] "Administrative leave" as defined in the Regulation is "[a]n authorized absence, without loss of pay and without charge to the employee's leave." *See* ECF No. [40-3] at 4. According to 5 U.S.C. § 6329a, "administrative leave" is "leave without loss of or reduction in pay[.]" 5 U.S.C. § 6329a(a)(1)(A)(i).

[5] In addition, to the extent that Gonzalez asserts that USDA violated § 7701(b)(2)(B) by changing his position or duty station during the pendency of the petition for review, he appears to be mistaken. *See Nadolski v. Merit Sys. Prot. Bd.*, 105 F.3d 642, 645 (Fed. Cir. 1997) (stating that the text of § 7701(b)(2)(B) "does not prevent an agency from imposing additional terms or conditions on this employment, such as a change of station or change in duties," and rejecting an interpretation of the statute that would leave "the agency with two options[:] recreating an unnecessary position or paying administrative leave, both of which prevent the agency from using the employee effectively during the interim relief period.").

challenge to USDA's compliance with the Initial Decision. *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) ("The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim.") (citation omitted). Gonzalez cites no authority, nor has the Court found any, to support an exercise of jurisdiction by this Court upon facts similar to those presented here.

Rather, in this context, Gonzalez's remedy for USDA's alleged non-compliance with the Initial Decision is to seek dismissal of the petition for review filed by USDA before the MSPB:

> In the context of interim relief, the Board will not look behind an agency determination that returning an employee to the position he encumbered will be unduly disruptive to the work environment. The statute and regulation providing for interim relief commit this determination to the agency and provide only that the appellant may seek the remedy of dismissal of the agency petition for review if the agency does not show that the appellant, either present or absent from the position in issue, is receiving the benefits to which he is entitled.

*Ginocchi v. Dep't of Treasury*, 53 M.S.P.R. 62, 69 (M.S.P.B. 1992); *see Moreno v. Dep't of Air Force*, 61 M.S.P.R. 396, 397 (M.S.P.B. 1994) ("The Board's regulations do not provide for consideration of a motion for compliance with an interim relief order; and appellant's remedy is to move that the Board dismiss the petition for review or cross petition for review."); *see also Guillebeau v. Dep't of Navy*, 362 F.3d 129, 1333 (Fed. Cir. 2004) (recognizing that the Board has discretion to dismiss petition for review for failure to comply with an interim relief order).[6] The regulations further provide the opportunity to challenge compliance with interim relief ordered in an initial decision after a final decision is rendered, regardless of which party ultimately prevails. *See* C.F.R. § 1201.116(g).

Indeed, Gonzalez has already filed two appeals with the MSPB: in the first, seeking to enforce the interim relief ordered in the Initial Decision; and in the second, asserting that he was

---

[6] According to applicable regulations, once the MSPB's decision becomes final, a party claiming lack of compliance may petition the MSPB for enforcement. 5 C.F.R. § 1201.182.

11

constructively suspended for more than fourteen (14) days as a result of being placed on AWOL status. *See* ECF No. [41-1] ("Appeal Decision") at 1-2. Notably, the presiding AJ dismissed the first appeal for lack of jurisdiction, expressing, as the Court does here, that the remedy for an agency's non-compliance with an interim relief order is to request dismissal of an agency's petition for review. *See id.* at 2. The second appeal was also dismissed because the AJ determined that the controlling issues were the same as those in the pending petition for review. *Id*. at 3-4. The instant case is another attempt to obtain review to which Gonzalez is not yet entitled.

Nevertheless, Gonzalez argues that only the Court may exercise jurisdiction in this case because the MSPB lacks jurisdiction over USDA's decision to consider him AWOL. *See Rose v. Dep't of Health & Human Servs.*, 721 F.2d 355, 356 (Fed. Cir. 1983) (affirming MSPB's holding that "no statute, rule or regulation provides for appeal from an agency's . . . decision to place an employee in AWOL status."). Relying on *Hall v. United States*, 617 F.3d 1313, 1316 (Fed. Cir. 2010), Gonzalez argues that the Court may properly exercise jurisdiction in this case. In *Hall*, the Federal Circuit noted that the Court of Federal Claims would ordinarily have jurisdiction over a claim for denial of pay because of AWOL status, since such a claim is not an adverse personnel action covered by the CSRA. *See id*. ("It is well established that the Court [ ] lacks jurisdiction over personnel actions that are covered by the C[ivil] S[ervice] R[eform] A[ct]." The CSRA "does not encompass the denial of pay for periods in which the employee is deemed to be AWOL."). The Federal Circuit ultimately determined that the Court of Federal Claims could exercise jurisdiction over the plaintiff's claim, and that plaintiff properly identified a money-mandating source—the Back Pay Act—within the meaning of the Tucker Act. *Id.* at 1318. Gonzalez argues for a similar conclusion here. In response, USDA contends that Gonzalez's claim is substantially distinct from the plaintiff's claim in *Hall*. Upon review, the Court agrees that *Hall* is distinguishable.

In *Hall*, the plaintiff was placed on AWOL status during a term of grand jury service, and eventually removed from her position as a result. 617 F.3d at 1315. After the Office of Personnel Management ("OPM") determined that the plaintiff was not entitled to leave pursuant to 5 U.S.C. § 6322[7] because her jury service was voluntary, the plaintiff filed suit in the Court of Federal Claims seeking back pay for the period *before* her removal, when she was still employed but designated as AWOL, as well as for reinstatement and post-removal back pay. *Id.* at 1316. The Court of Federal Claims dismissed the case for lack of subject matter jurisdiction, noting that all her claims stemmed from removal from her position, and that according to the CSRA, the MSPB has exclusive jurisdiction regarding removal actions. *Id*.

On appeal, the Federal Circuit disagreed, determining that the Court of Federal Claims could exercise jurisdiction over the plaintiff's pre-removal back pay claim because it did not stem from her removal. The Federal Circuit noted that "Ms. Hall's claim for money damages pursuant to section 6322(a) became ripe as soon as she was placed on AWOL status and deprived of pay. That claim did not arise from or turn on her removal from service." *Id.* at 1317. As the Federal Circuit noted further, "reinstatement is a necessary precondition for an employee to be entitled to post-removal back pay, [and] it is not a precondition for an award of pre-removal back pay." *Id*. Therefore, the Federal Circuit concluded that the Court of Federal Claims could exercise

---

[7] 5 U.S.C. § 6322 provides that

> (a) An employee . . . or an individual employed by the government of the District of Columbia is entitled to leave, without loss of, or reduction in, pay, leave to which he otherwise is entitled, credit for time or service, or performance of efficiency rating, during a period of absence with respect to which he is summoned, in connection with a judicial proceeding, by a court or authority responsible for the conduct of that proceeding, to serve—
>
> (1) as a juror[.]

13

jurisdiction over the plaintiff's claim for pre-removal back pay pursuant to the Tucker Act and Back Pay Act.

However, unlike the plaintiff's claim in *Hall*, Gonzalez's claim does not involve pre-removal back pay wrongfully withheld due to his AWOL status. Rather, Gonzalez's claim arises directly from his removal of service and his claim as pleaded seeks post-removal back pay— Gonzalez was removed from his employment and granted reinstatement as interim relief by the AJ pending resolution of any petition for review. ECF No. [36] ¶¶ 10-12. As a result, contrary to Gonzalez's contention, *Hall* does not support the Court's exercise of jurisdiction here. If Gonzalez's claim involved pre-removal back pay, the Court would agree that *Hall* would support the exercise of jurisdiction. However, following the Federal Circuit's reasoning in *Hall*, the Court lacks jurisdiction over Gonzalez's claim because it involves post-removal back pay, and the Court need not engage in analysis under the Little Tucker Act to reach that conclusion. *Hall*, 617 F.3d at 1317. In *Hall*, the Federal Circuit agreed with the Court of Federal Claims' dismissal of the plaintiff's claims for reinstatement and post-removal back pay because the CSRA places disputes regarding removal actions within the exclusive jurisdiction of the MSPB. *Id*. The Federal Circuit concluded, without conducting analysis under the Little Tucker Act, that "[o]nly the ancillary claims for reinstatement and post-removal back pay were predicated on the removal action. As to those ancillary claims, we agree with the Court of Federal Claims that it lacked jurisdiction." *Id*.

Because Gonzalez's claim, properly viewed, involves a claim for post-removal back pay, and his right to post-removal back pay arose as a result of the Initial Decision, Gonzalez's allegation that the Court has jurisdiction pursuant to the Little Tucker Act, the Back Pay Act, and USDA's decision to place him on administrative leave is not supported by the facts in this case. *Id*.

### B. Gonzalez's claim is improper as neither the Regulation nor 5 U.S.C. § 7701(b)(2)(A) are money-mandating

Even if the Court viewed Gonzalez's claim as independent from the Initial Decision, USDA argues that neither the Regulation nor 5 U.S.C. § 7701(b)(2)(A) are money-mandating sources upon which Gonzalez may rely to establish jurisdiction in this case.

"A source is money-mandating if it: (1) imposes specific obligations on the government, and (2) can fairly be interpreted as mandating compensation for damages sustained from the government's breach of those obligations." *McAllister v. United States*, 105 Fed. Cl. 180, 183 (Fed. Cl. 2012) (citing *Samish Indian Nation v. United States*, 657 F.3d 1330, 1335 (Fed. Cir. 2011), *judgment vacated in part on other grounds by United States v. Samish Indian Nation*, 568 U.S. 936 (2012)).

#### i. The Regulation

Gonzalez argues that the Regulation is money-mandating because it sets forth USDA's policy on excused absence and administrative leave and defines administrative leave as "[a]n authorized absence, without loss of pay and without charge to the employee's leave." ECF No. [40-3] at 3-4. As such, Gonzalez contends that the Regulation is money-mandating because it requires payment of an employee's salary while an employee is on administrative leave.

Here, the Regulation states that its purpose "is to set forth the Department of Agriculture's (USDA) policy on excused absence and administrative leave." ECF No. [40-3] at 3. The Regulation further defines administrative leave as "[a]n authorized absence, without loss of pay and without charge to the employee's leave." *Id.* at 4. These two provisions together, however, do not impose specific obligations on USDA, nor can they be fairly interpreted as mandating compensation for damages sustained from the breach of those obligations. The Regulation does not require USDA to place an employee on administrative leave, or otherwise to maintain an

15

employee on administrative leave for any particular length of time. Indeed, in the context of a disciplinary action, the Regulation uses discretionary language:

> [a]n employee who is the subject of an investigation involving allegations of serious misconduct wherein workplace safety could be compromised, or those whose workplace behavior represents a potential threat to themselves or others, *may* be placed on administrative leave.

*Id*. at 11 (emphasis added). USDA Departmental Regulation No. 4060-630-002 does not create any binding rule enforceable under the Tucker Act.

### ii. 5 U.S.C. § 7701(b)(2)(A)

Gonzalez argues in the alternative that 5 U.S.C. § 7701(b)(2)(A) provides an avenue for the relief he seeks because the text of 5 U.S.C. § 7701(b)(2)(A) requires that federal employees must be paid while an agency prevents their return to full duty, stating that an employee "shall be granted the relief provided in the decision effective upon the making of the decision, and remaining in effect pending the outcome of any petition for review under subsection (e)[.]" 5 U.S.C. § 7701(b)(2)(A). However, as with the Regulation, the statute does not impose specific obligations on USDA, nor can it be interpreted as mandating compensation for damages sustained from the breach of those obligations.

> 5 U.S.C. § 7701(b)(2) provides that
>
> (A) If an employee or applicant for employment is the prevailing party in an appeal under this subsection, the employee or applicant shall be granted the relief provided in the decision effective upon the making of the decision, and remaining in effect pending the outcome of any petition for review under subsection (e), unless—
>
>   (i) the deciding official determines that the granting of such relief is not appropriate; or
>
>   (ii)
>     (I) the relief granted in the decision provides that such employee or applicant shall return or be present at the place of employment during the period pending the outcome of any petition for review under subsection (e); and

> (II) the employing agency, subject to the provisions of subparagraph (B), determines that the return or presence of such employee or applicant is unduly disruptive to the work environment.
>
> (B) If an agency makes a determination under subparagraph (A)(ii)(II) that prevents the return or presence of an employee at the place of employment, such employee shall receive pay, compensation, and all other benefits as terms and conditions of employment during the period pending the outcome of any petition for review under subsection (e).

5 U.S.C. § 7701(b)(2)(A), (B). In this case, the AJ canceled Gonzalez's removal and ordered that he be "retroactively restore[d]." *See* ECF No. [40-1] at 8. The AJ also ordered interim relief in accordance with § 7701(b)(2)(A) in the event that either party filed a petition for review, which there is no dispute that USDA did in this case. As the Baldus Letter shows, rather than return Gonzalez to his position, USDA exercised its discretion under 5 U.S.C. § 7701(b)(2)(A)(ii), and placed him on administrative leave. The statute does not state that once an agency makes the undue disruption determination, it cannot take any further action with respect to an employee. As the Court previously notes, *see supra* n.5, the Federal Circuit has rejected a narrow reading of § 7701(b), such as the one Gonzalez urges here. In *Nadolski*, in which a former Postal Service employee's suggested reading of the statute permitted only two options—either recreation of an unnecessary position or administrative leave—the Federal Circuit held that

> [t]he text—"such employee shall receive pay, compensation, and all other benefits as terms and conditions of employment"—does not prevent an agency from imposing additional terms or conditions on this employment, such as a change of station or change in duties.

105 F.3d at 645. Thus, the premise underlying Gonzalez's claim here—that USDA could not take any further action once he was placed on administrative leave, including realigning his position, requiring him to complete a background check, and considering him to be AWOL when he failed to comply—is simply not supported by relevant authority.

Case No. 22-cv-20190-BLOOM/Otazo-Reyes

Moreover, *Ginocchi*, on which Gonzalez relies, is not to the contrary. In *Ginocchi*, the MSPB noted in pertinent part that

> The statute and the regulation providing for interim relief commit this [undue disruption] determination to the agency and provide only that the appellant may seek the remedy of dismissal of the agency petition for review if the agency does not show that the appellant, either present or absent from the position in issue, is receiving the benefits to which he is entitled.

53 M.S.P.R. at 69. *Ginocchi*, however, does not support an interpretation that § 7701(b)(2)(A) is money-mandating in the context of the Little Tucker Act. Gonzalez cites no authority, and the Court has not found any, to indicate that such an interpretation is correct.

Plaintiff fails to identify a money-mandating source of law actionable under the Little Tucker Act, 28 U.S.C. § 1346. As such, the Court lacks jurisdiction over Gonzalez's claim.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [37]**, is **GRANTED**. This is case is **DISMISSED WITHOUT PREJUDICE**, for lack of subject matter jurisdiction. The Clerk of Court is directed to **CLOSE** this case, all deadlines are terminated, and any pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 17, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record